You're ready Mr. Barrett? I am your honor. Thank you and may it please the court I would respectfully request to be permitted five minutes rebuttal at the end of Appelli's argument. Okay so you must have both gotten the memo because in the prior argument they asked for five minutes and five minutes is a little bit unusual usually it's two or three it's fine but I'm wondering if a memo went out that we missed saying on Thursdays you need to reserve five minutes of rebuttal. Uh the reason for my request your honor is because um I there are some issues that I anticipate Appelli raising that may take me a little bit more time. Okay thank you and may it please the court my name is William Barrett and I represent Lachelle Watson uh in a case that she brings before this court against Drexel University. Uh we are requesting that this honorable court provide the finding of the entry of summary judgment um on Ms. Watson's Americans with Disabilities Act claims and Family and Medical Act claims. Did you waive the retaliation under the FMLA in your argument before Judge Rubino? I thought you had. That's correct your honor uh and I don't think the facts would support a retaliation claim uh there are also some waiver arguments raised in Appelli's brief um that depending on if you'd like me to address those now I'm happy to um my view is that we a lot of times in these employment cases involving the FMLA and ADA there are an intertwining of the claims essentially what we are saying is that the law is intertwined I mean yeah but one applies to another but but do you is it accurate that you haven't raised in your correct your honor I don't think the facts would support a finding of an evil motive as against Ms. Watson but in terms of her termination the failure to engage her in the interactive process towards an ADA accommodation with regards to the fact that Drexel terminated her based on what they viewed as unexcused absences our claims that are preserved to my thinking are that those absences should have been protected under the FMLA and ADA but it's all about FMLA right I disagree your honor I think that the ADA claim is preserved in our brief uh in the from June of 2017 between Ms. Watson and Mr. Carlton essentially triggered Drexel's obligation to engage her in an interactive process towards accommodating those absences for leave yeah well there you go you got to the point which is the only accommodation that you were claiming they should have made was approve or leave that's the only accommodation that was asked for that's the accommodation was being sought right that is correct your honor don't count those I'm sorry your honor all right well let me ask you this I there is uh if I understand the timeline right she asked for and is approved initially for uh June 2 2016 to August 24 2016 there's no dispute about that and then she's approved again without having to submit another certification for August 24 through October 17 2016 and what what where we run into trouble is uh beginning October 18 through May 17 that's the time frame where there's uh first uh a denial because of a lack of uh eye-to-eye and you and you say if I understood the position correctly that that there's a like you said a failure of an error process they didn't give her the notice they should have so here here's here's my question for you with that long lead-in assume for the sake of discussion that they blew it when they first did that they they send her a letter uh in December if I'm right uh or maybe it's maybe it's in January of the next year but in any event they send her a letter that says look from October 18 2016 through May 17 uh 2017 we're going to give you uh an opportunity to fix the problem with your certification am I am I correct in my understanding of the facts on that somewhat your honor and the way I would address that is to say there was a letter sent to Ms. Drexel and essentially to my thinking it and in our view it's a little confusing as to what that initial what's the date of that letter that's November 9 there's there's two letters your honor there's one from January 7 2017 I believe and then there's another letter as of January 11 2017 both from Guardian yeah February there's a there's a uh a letter let's see uh on February 28 right February 28 2017 that provides her with the opportunity to cure the incomplete certification and and so so my question for you is if even if they'd messed up that on the first go around when they come back on February 28th and say you can still fix this and they and they tell her what she needs to do to fix it why doesn't that put the ball back in her court in a way that she had responsibility for and that if it doesn't work it's on her because your honor I think that the communications when taken as a whole are confusing and confounding and they don't live up to the standard set forth in Hansler where you have the employer when they find the certification to be incomplete has to give a reasonable opportunity to the employee well it's seven days right isn't it doesn't don't the reg say and I think we said in Hansler you have seven days to said this is quoting from a chart and judge Rubino's uh not to Rubino's the district court's opinion that it says that the it's denied the request for we leave from Guardian because the CHP did not contain all the information necessary for Guardian to make the determination about requested leave and then it says because the position had not completed the quote and quotes are in the opinion amount of leave needed section of the CHP is that the only and I take it that is the information that was not included by the doctor right that section box c was not checked I think that's right your honor and our and and we are um and and I think that the way that this worked was that Ms. Watson was confused during that whole time period because she's not she's communicating with Guardian her doctors as well as Drexel as of May uh mid-May of 2017 she is summoned to a meeting and meanwhile she's taking FMLA and she's giving notice to her supervisors for this entire time period saying my fibroids are creating an issue for me I need to take FMLA leave and I'm leaving and and there's no written discipline there's no hey hold on Lachelle you need to uh square this away with Guardian as to whether you're eligible there's no there's none of that and and I found this confusing so I could have confused by it but but the February 28 letter helped me understand why that does not comport with what we said has to be provided in Hansler gave her seven days um doesn't possess doesn't say in that letter she has seven days but under the law she has seven days from February 28 let's say from the receipt of the February 28 letter um and then she was instructed in March 13 2017 that her request for leave for the time period from October 18 to May 31 of 2017 was denied due to incomplete certification and I'm assuming that incomplete certification is still going back to not filling out the amount of leave needed in that section of the of the CHP I think it's box C is that right I think that that is correct your honor I think that's Drexel's position and I think what why is it wrong because your honor she is receiving several different letters the first letter that was sent by Drexel with regards to this uh insufficient certification says we didn't even receive the certification to which Ms. Watson understand it's a mess and she wasn't told in the prior notifications as she had to have been told under Hansler and the statute in the regs she wasn't told what she had to do to fix it until that letter is sent on February 28th and then after that um it's unfortunate clearly the conduct here is not going to win Drexel any nominations for employer of the year but that's not our concern our concern is whether or not FMLA was complied with and it seems to me that had the February 28th notification not specifically stated that the CHP was missing the section for amount of leave needed then you'd be in really good shape because Hansler kicks in and Drexel basically blew it but once that is given to her uh and then you have seven days to fix it I understand she's confused I don't frankly blame her for being confused but confusion doesn't necessarily um come in under the FL FMLA that's just not there so help me understand why after that February 28th notice was given with with notice which I think you're saying is adequate correct me if I'm not uh interpreting what you're saying accurately there seven days run and then the next thing is March 13 when they advise her that her notification uh due to incomplete certification that does not reiterate why it was incomplete and it does seem like she did everything she thought she had to do she acted promptly when she was informed that her certification was denied she went back to the doctor the doctors are complaining they've noticed anything like this before they've never had to fill out this many certifications um but they get they went and filled out another certification anyhow but there was something about that little box it still wasn't checked on most of the forms and I and frankly only speaking for myself I'm very sympathetic to your client simply doesn't get you anywhere unless there's a regulation or statute or a case that translates my sympathy sympathy into some kind of controlling precedent and I'm struggling to find it and it seems to me speaking for myself that February 28 notification may just pull the legs off from under you if I'm missing something please let me know I appreciate that your honor um what I would say is that I don't think that in this set of circumstances in these facts that it would be fair to characterize Drexel's conduct through Guardian as a reasonable opportunity for Ms. Watson to cure the deficiencies with the certification because very into it I tell law students all the time it's really nice when when judges think that our job is um achieving a fair result we have to achieve a legal result sometimes that is the same as a fair result sometimes it isn't I can't tell you how many times I've written decisions I'm sure the same is true for my colleagues on this panel where we've reached conclusions that we thought were just downright unfair it happens in immigration all the time but it's what the law requires so help me and I understand you're in summary judgment so maybe that makes a difference but maybe it doesn't um and I'm she had her seven days seems to me Congress has said fairness requires that the person be given seven days to cure the notice uh to address the notice she had her seven days so if we take fairness in terms of what Congress apparently has defined as being fair I can help me understand how she gets over that hurdle I think that the the interpretation of the regulations governing governing the certification establishes the reasonable opportunity to cure so just because Guardian sends her a letter saying um that the certification has to have that section c box checked in a very specific discussion of exactly how much and how often she's going to be needing to leave is omitted by her doctors it can't be looked at simply that letter does not simply um absolve Drexel of any violations because you have to look at the entire time period and Drexel's actions during that time as providing a well help us help us with that because that's that's a key point where where is it in the law right they they have to give her an opportunity to cure and and this clearly gives her an opportunity to cure it points out to her it tells her how to do it it tells her what's got to be done it gives her the form and it tells her do it right and you've got a period of time to do it it lays all that out for her now assume for the sake of discussion we agreed with you that the earlier stuff was bad and they blew it where in the law do you have something that says that that if a person is prepared if an employer is prepared to overlook all the previous defaults because she she had not done what she needed to do in the previous one she had not given them the information she was required to and they failed to give the notice right but here they're saying look we're going to give you another chance to fix all this and she still doesn't do it where in the law is there something that says that an employer who makes right its failure to know to provide proper notice and also forgives the employees previous failures is by virtue of that earlier failure which they are trying to fix still liable when the employee doesn't do what the employee is supposed to do the there is very little guidance or support that i can find within the cases that follow hansler um for that for that what i would say is that the facts are create an issue because even at these meetings that she was having with regards to uh the certifications in june where she is suspended whether where her employment is put on hold they are mr carlton through drexel is saying we still don't have your certification ms watson that wasn't true at that point it was the the purported problem with the certification was the lack of boxy being checked and it being deemed insufficient in or around 24th um the well hold on a second when you say that wasn't true it was true that they didn't get the full information they were entitled to ask for and that they did ask for right i mean i'm listen i'm with judge mckee on this you're it's it's not that your client's position is unsympathetic it is sympathetic and drexel did not put too fine a point on it kicking her to the curb just before she asked to have major surgery looks frankly terrible it doesn't it's not the sort of thing that makes people feel good about drexel university and now ms uh gideas will speak to you know that drexel did what they could etc etc and we understand but it's not that you don't have a sympathetic case you do the question is whether the question and the only question is whether drexel did the things it had to do in order to exercise its rights and its rights were to say we're not giving you leave under this federal act unless you give us the information we're entitled to have and they and they appear to have done that in the february 28th letter now that's that's where the problem is that we're trying to get you to to help us see is there is something other going on in this case that would allow your client not to give the information and still have an fmla claim yes because she uh because she is communicating with drexel about how to cure the deficiencies with regards to her uh certification and as a matter of fact guardians own people who are looking at her file send an email in around may 24th stating by the way ms watson's medical information in the file is supportive of the leaves for the entire period do you want to overturn your decision to deny the medical leave and then no one ever answers that question so as a legal matter though as a it's just a pure legal matter are they is was drexel entitled to say no i mean that might be the that might be the morally right thing to do but we're entitled to rest on what the statutes and the regs provide and she didn't do what she was supposed to do and so we're not overturning it i mean they maybe never acted on it but are they required are they required to overturn the the decision guardian made based on the statute and regs i think that uh i think that they are required to overturn because the um because guardian is is making all the determinations as to eligibility and approval and denial for the fmla leave and they didn't make any mistakes i mean the guardian did not make any mistakes the forms that were we really address this kind of a situation we're talking about when a certification is insufficient and when leave can be denied after an insufficient certification has been received and we said and this is at page 153 of the third opinion that if the employer determines that a certification is either incomplete or insufficient it may deny the requested leave on the basis of an inadequate certification but it may only do so if it has provided the employee with seven calendar days unless that's not practical given the particular circumstances of the employee and employee could not have done that i'm paraphrasing there and that end of parenthesis to procure any such sufficiency and that's why i keep coming back to that one final last letter that was sent out that appears to do that it points her attention to what was lacking she then had seven days under hansler and under the regs she was not entitled to any more than seven days clearly drexel under all these circumstances um i would they should have given more than seven days they're not going to win any awards for employer of the month but they're not legally obligated to do it and that's all we can do here it may have a claim for retaliation it seems to me but that's been you could well have argued that the reason she was finally canned was because they were just fed up with all these fmla requests and every time they turn around she's running to the doctor but the retaliation claim under the fmla is not before us so again i'm looking hard to find a path to get me to where you want us to get and i'm i'm stumbling my stumbling my toe on that february 28th notification well what about this is um the the problem that i have with the reliance upon that um february 2017 letter to ms watson in that drexel guardian are making all of these different communications to her they're telling her several different things we didn't receive your certification that that wasn't true ms watson testified clearly that i watched the doctor fax that over to guardian um the during those june meetings mr carlton is telling her we still don't have your certification this is after uh guardian has already told him that her medical on file is fully supportive of approval for that time period so why is drexel permitted to make all of these inaccurate communications to ms watson but that she must rigidly adhere to this arguably and again we think the court looked at the facts in a light favorable to drexel not to ms watson in the entry of summary judgment well wait wait wait wait stop right there what can you point to where the the court was not looking particularly on the key point that judge mckee has been asking you about and and i've asked you about which is this february 28th letter that's the letter where they say we're giving you another chance i mean it's it's is what how are they not look how did the district court fail to look at that in a light favorable to your client because he because the court the district court is relying solely on one communication when ms watson had been obtaining fmla and utilizing fmla for almost a year prior to that um and there are numerous communications that um are um did they did they ever did they ever give her a notification prior to february 28th i here's here's how i thought it worked they told her you're okay when she first asked when she asked for an extension they said you can have it and you don't need a new certification because it's covered by your earlier one you're and then she asked for another one and they said well you need another certification and she didn't do it and they told her you didn't do it so we can't grant it and but they didn't give the right notice and that was bad on them you could you know like if that record ended there you'd be in hansler land and you might have and you'd probably you know you'd have some kind of a claim but the record doesn't end there then comes february 28th where they say you know what we're giving to us all the information give it the right information we'll let you have we'll we'll we'll approve it for this whole time period starting in october now that's that seems to be the universe that we're operating in and and maybe we're just plowing the same ground again again now here but when you say the district court didn't look at this in the light most to your client there was a chart the court clearly laid out those things where did the court misstep and not understand how to look at this in the light most favorable to your client unless what your position is is it's just not fair it's not right they they they were giving her the runaround the court did not look at the facts in the light most favorable to the plaintiff in that it essentially stops its analysis once she gets that letter it ignores the court ignored all of the subsequent communications until ms watson is finally terminated to where and that's where i think but what legal effect i think the problem is what legal effect the subsequent notifications have given the seven day clock that started ticking in february 28th well i think for for one thing it triggers this interactive process that under the ada that drexel failed to engage but the problem there is the fmla as judge george said earlier that defines the process and congress gave a process when the ada claim is based upon an fmla and i'll call it a disability a fmla pathology um and so what what more should they have done other than tell her look you got to get us this form they should not have the fmla they should not have misled her as to what her employment status was and they mislead her because that wasn't employment well you're talking about on hold versus termination correct and and i think that that should not that was ignored by the district court and it should not have been ignored because how does that how does that play into how does that affect an fmla claim if if if at the if at the point where they say you've got this opportunity to cure and she doesn't cure it i mean how yeah how does that have impact on an fmla claim and not maybe some other kind of claim you could have brought but didn't bring well i brought the the ada claim with regards to the failure to engage in the interactive process okay and essentially and there are cases in the third circuit that say the fmla gives you x number of days uh 12 weeks of leave however the ada can uh provide additional accommodations above and beyond what the fmla requires so that breakdown in the interactive process which miss watson testified i'm trying to call guardian i'm trying to call my union representation i'm trying to call drexel through mr carlton and no one's getting back to me um that is a breakdown in the interactive process you're not mr baird describing any any fault or wrongdoing on the part of the doctors in this case but um for my reading of the record i thought that the doctors had made errors that had serious consequences um how do we hold drexel responsible if we determine that the doctor's uh lack of let's say information was the main cause of um of the problem because i i think that your honor addresses two two separate um issues i think that the one issue is and what we are focused on it with regards to what appellant is focused on is whether drexel fulfilled their obligations under the ada to engage her in an interactive process um ms watson whether ms watson's physicians properly filled out the certifications um well that's what she claims it's part of the problem is that the physicians were not providing drexel with the appropriate information concerning her her medical status i understand that however guardian themselves in the email that i repeatedly point to here says that the medical that she submitted the medical on file this is as of may of 2017 fully supports her uh approval for that time period um so we we we would quibble with the idea that the certifications were uh so insufficient that drexel could not have found her to be approved under the um under the fmla or the ada because the the court wants to focus the district court wanted to focus on that one letter saying the certification is insufficient you're out of luck but i think to do that is to completely pull that and separate that out from the facts of this case and all the facts surrounding exactly what happened to ms watson and i think that when you look at the the reasonable opportunity to cure deficiencies i think that i think the court should overturn the entry of summary judgment okay any other questions at all just for today's jordan okay he was using quite a bit of time so we'll hear again from you mr period go to miss is it help me with your name is it jenice jenice okay thank you before she starts i just sent you uh julio and kent a message in your chat box we can't lean over and whisper in this format so it's a bit of a problem but just take a look at the note i just sent you uh okay mr julius judice i'm sorry i see i approached him that i mispronounced it thank you good morning your honors um may it please the court charlene judy's on behalf of appelli drexel university um first i'd like to address sort of the timeline that um we've been discussing with respect to the letter sent to miss watson while we have focused on the february 28th letter that did in fact highlight everything that was wrong with the um certification that miss watson's doctor provided there were several letters that predated that there was a november 9th letter that miss watson testified that she received help me understand what britain's concerning me here now is the fml thing as you may have summarized from our questions of mr baird that does seem like a hurdle under february 28th but there's an ada claim there too given the history here i mean this is a woman who um every time she gets a notice from guardian she goes to the doctor now it goes to the doctor you ask the doctor to fix this then she is in the office and sees the doctor actually in her own mind fixing it uh she's put on hold and so far as she knows she's on hold but then somehow that hold turns into a termination she's called to a meeting with her supervisor i guess carlton the union rep is not there she has to on her own say wait a minute i'm not meeting with you out my my union rep then the union rep is settled why isn't all that at least as to the ada claim enough to get past summary judgment looks to me like she made out a claim that they're certainly not going through any kind of interactive process her only interactive process is no i mean that's it's like um there's no discussion at all it's no and then um you're hold but hold doesn't mean hold you're fired she's on she's then scheduled for this surgery which obviously is a pretty important thing to her given her history and then she's told on the eve of surgery uh got to cancel your surgery because uh you don't have any insurance that to me does not sound like a summary judgment ada case maybe not enough mla case maybe mr barrett's right about that well i would disagree your honor and the reason why i disagree is because the interactive process took place in may of 2016 when miss watson had a conversation with daryl carlton and explained that she had medical issues that necessitated some time off miss watson testified that during that conversation mr carlton said hey lachelle there's this process called fmla go to hr advise them of your issue fill out the necessary documentation and you will be granted fmla leave that was that and she wasn't she did that and she was granted fmla leave she wait are you same as jetties that and i apologize did i just say your name right is it is it gettys or jetties well it's jetties but you know jetties jetties i apologize i'm going to call you counsel i can i can get that one right jetties is a beautiful name um so is the is the is the assertion that interactive process interactive process engagement it was resolved by one supervisor the year before because that's that's it after that it's just her and guardian duking it out and and there doesn't seem to be any further attempt to work with her to say look i know we're writing letters and stuff back and forth to each other but here's here's the issue uh lachelle we've got a real problem and and you're coming up on surgery major surgery we know that just get your doctor to check the box and send it back and it's all good i mean there's no attempt other than this we'll send you a letter don't send you a letter there's no engagement besides that after the conversation with her supervisor back in may of the previous year right there is no there is no conversation between lachelle watson and drexel because according to her testimony after she she received the denial letter based on her own testimony she said she did not have a conversation with anyone at drexel she simply waited for the process to go through with with guardian miss watson did not thereafter contact drexel university and say hey i'm getting these denial letters she did not thereafter contact mr carlton and say hey i'm getting these denial letters she testified that she received these denial letters that she understood the difference between being eligible and approved she continued to leave but did not speak to us she in fact testified i otherwise hid my illness pretty well i didn't discuss my she didn't she did indeed say i wasn't going around you know usually we're we think it commendable that somebody doesn't put on sackcloth and ashes and go around you know saying i'm what she did her best to put on a brave face and get her work done it appears to show it's what she's saying and there's if you're looking at the record in the light most favorable to her that's what she's doing and she is engaging with drexel to the extent she can through drexel's chosen third party administrator she's not going back to drexel proper but guardian is the agent of drexel and she's talking and communicating with them she told her go to guardian yeah exactly advice her to go to guardian so that she could get the lead and guardian was well presented to give her any leave she requested had she provided the documentation and while i know that we focus on the february 28th letter there was in fact a 1027 letter miss watson disputes that she received it but it was very similar to the 28th letter that sets out the exact um deficiencies of her of her sprint and we and we've got an obligation to look at this in the light most favorable to her and she says she didn't get it so we will say okay she didn't get it but you know the drexel is insisting on the just the punctilio of the law the most exacting uh uh compliance with the statute and the regulation so one would think that they would be a little careful about that themselves and yet on the january 11th 2017 letter that they sent her they don't send her this stuff that is required in the statute they don't send her uh the uh the certification uh blank they don't mention that uh she's eligible uh during this this period they they don't they don't do those things in the consequence of it is there is there a is there a prejudice requirement under the fmla or should drexel suffer the consequences of itself failing to provide appropriate notice well in the january 11th letter the letter does advise her that she's eligible for leave but that she needs to provide documentation and that's at s appendix 276 to 277 which she thought she had done which her doctors thought she had done wouldn't wouldn't you agree mrs deus said it does not provide the blank certification form that it was required to and it did not mention that the certification was required in order to be eligible didn't didn't do those things did it i would agree okay and and that's what the law requires and they failed in their obligation under the law so that's why i'm putting it to you you're you're saying she should be held to the exactitude of the law drexel did not obey the exactitude of the law does the fmla require uh a prejudice component or is it enough to say you didn't obey the law and there are consequences for that and the consequence is you interfere with her fmla leave we thereafter provided her an opportunity to cure so we didn't at that point cut her off she did receive the february 28th letter providing all details to the jury but we're in summary judgment well and and also you're saying what you're saying by that is there's a prejudice requirement in the law the fmla requires you to show prejudice from uh employer's failure to do what the employer is required to do and that's why i'm asking you is there a prejudice requirement under the fmla or is it enough to say you didn't do what you're supposed to do because in this case you're saying to her you didn't do what you're supposed to do tough is she entitled to say back to drexel well you didn't do what you were supposed to do tough well i think what we're doing is we're discounting all the many letters that we sent to her when she had not complied with our requirements to submit the documentation so we're looking at it they're inadequate to judge jordan's point to the extent that her uh chp form was uh inadequate um your prior letters to her were inadequate because was just said they didn't do what the law required and that is tell her what's wrong with her application there were just letters back and forth but they didn't give her an opportunity to cure the defect that came way further in the process and then there's this very strange uh course of dealing with her where she's summoned to a meeting without her union of well all appears in the record this is a good employee i don't why she's getting the runaround is behind me but she's on the record anyhow good employee for all intents and purposes she was a good employee the reason why she was called to that meeting is because at the time that hr recognizes that she has these hosts of 11 absences that are not indicated they're approved her employer now wants to investigate the absences not only does daryl call to meet with her but we reach out to guardian there are several emails where we reach out to guardian and we say help us understand did she submit the information there's even communication where we ask we go so far as to ask guardian are the conversations recorded she's disputing what she said all of this is in the record at some point guardian told you at some point that uh you have the option you could go ahead and approve the request or you could deny the request and you took the road less traveled you denied the request you are correct your honor guardian said that the the medical on file supports the period of time what it did not support was the usage in the documentation that we have and i'll pull up the site for you guardian represents the drexel that based on the last certification which was submitted one year prior to her initial start of use of fmla because the doctor had checked off the bark the box on chronic they could approve her for one absence every six months for two hours between that time period miss watson had amassed 11 absences spanning from four hours to eight hours so even if drexel took the opportunity to reverse the denial based upon the usage she had far exceeded what she had used so even the very last certificate that was provided by her document her doctor in attempt to cure the past deficiencies they did not provide her with the usage that she used is there anything in the record mrs dais that indicates that derrick joe carlton or anybody else at drexel went to her and said and now and now i'm i'm i'm thinking of this not strictly in fmla terms but in the ada terms accommodation terms that anybody went to her and said look shell you're doing you're we understand you've got an issue but you got 11 absences now what's going on what can we like is there we know you have this medical issue what what do you need what you're putting your you're putting your employment in danger here let's talk about this is there any indication that that happened because if there is i didn't see it it just looked like the next time they saw her it was hey you're you're you're on hold which really meant hey we're about to fire you but it are we missing something in the record here you're not missing a conversation between drexel and miss watson advising her that you have accrued these 11 absences but there is documentation that when she gets these letters from guardian she knows that she's eligible and not approved during her death her deposition she testified that she understood that she was not yet approved she understood that she had received denial letters and she understood that she was using absences having received denial letters so no there was not a conversation between drexel and miss watson but there were letters sent to her by guardian that she received under the ada setting fmla aside let's assume for the sake of discussion that that you're right the fmla you know she didn't fit that procrustean bed tough for her the you know she's she's she's losing her feet she's done uh but looking at the ada piece of this independent of the fmla does did drexel not guardian but drexel have an obligation to have some kind of iterative communication with her about uh her medical needs or issues or were they entitled to say you know guardians are people and fmla is the only accommodation we're talking about was there no other accommodation she was entitled to or should have had a discussion with them about that they that they had a good faith obligation to engage on all that miss watson required and testified that she required was leave drexel was under the understanding that through guardian she would be provided with all the leave that she needed drexel did not have um minute by minute awareness that these absences that she had been reported was were not in fact protected by the fmla it was drexel's understanding that she would receive all the leave that she needed suffice that she would provide guardian with the documentation is there is there if we look at this in the light most favorable to her is there any implication or inference to be drawn from the fact that drexel decides to let the hammer drop just before a just before a major surgery there's nothing in the record um where miss watson testifies that she communicated directly to drexel that she was about to have surgery there was no other conversation even in the testimony she testifies after receiving the november 9th denial letter she did not thereafter have a conversation with drexel about her medical condition until the may 2017 meeting she did not say anything and she testified that she believes that mr watson would have given her anything she would have asked for these are her words she believes that he would have given her anything she would have asked for has she asked so she does say something on may 2017 on may 2017 we call her in to ask her about these absences it is her position that they have been approved so at that point it is not a oh i need more time it is you're wrong drexel they're actually approved so then we begin an investigation as to whether they are approved and you can see in the record she begins to forward mr carlton on in and around june 8th several emails on the same day trying to forward him documents to show oh no you're wrong drexel they were in fact approved here are the letters but none of the letters focused on the time period in question here the conversation was oh no drexel it wasn't drexel i need more time or i need more it was drexel i think i've got this approved already why are you doing this to me which is not an unnatural position probably for somebody to take who's been trying hard through through a union rep you know maybe we should ask mr baird this i don't know what kind of union drops person like a hot potato when they're in the midst of stuff like this uh and she's trying to work with drexel through guardian and and she has this conversation and the next thing she knows she's out the door i guess i guess the question i'm asking and you've maybe done the very best you can do to answer it is uh what kind of iterative process is it if if the iterative process is we tell you we we don't engage with you at all until the very end and then we say you're fired after we told you we only had hold well i think what we're focusing what we're missing is that the iterative process took place in the beginning we were under the impression that she would receive everything that she needed by going through guardian we did not understand that she was at a situation where she's she's she's not showing up to work mr watson is seeing her she's not showing up to work for all intents and purposes he believes that she's using time that is actually approved he has no knowledge that when she's not showing up to work and reporting well that's that's her isn't that the irony that's her position that's my supervisor thinks it's approved i think it's approved everybody thinks it's not approved she's refused letters that says it's not approved she sees letters that says not only is it not approved but here's why it's not approved yeah that letter that letter went to her that said hey here these letters are saying you're not approved and here's another letter it's not approved because you never signed into certification she knows the certification wasn't in she saw the doctor fax it in so in her own mind what do you mean it wasn't approved my supervisor's saying i'm approved these people in the office who don't even know me don't know what the hell they're talking about supervisor knows it's approved my doctor sent it in my doctors plural she had three doctors sitting in certification say it's approved i'm good to go here and in terms of not showing up for work it's really to me like she couldn't show up for work this woman was in a pretty serious mental medical situation but but we do understand your argument and your time's up for a bit mr baird you've got you reserve five minutes unless i don't want to cut off my colleagues any questions uh no just just thank you thanks i got the position thank you thank you very much mr bird thank you uh and uh i i don't think i need um five minutes uh if the court has any questions i i'm fully ready to address those but i i do think given the arguments that the court has a a good understanding of the issues the one thing i would like to just know what a relief it is to hear an attorney say um basically i'll rest on my brief i'm not going to use time even though i have it do you know how incredibly refreshing that is after the first argument that's true that's true and i hate to spoil it by asking a question but i've got one uh you heard mr deus say they understood the only thing she was asking for was leave that's the only thing they ever understood and and indeed when i look at the record i don't see anything other than that so why is drexel wrong to say you can hardly fault us for not engaging in an iterative process when at the jump we tell her go to hr talk to them about fmla they'll tell you how to get it done and they let her engage with their agent and there's clearly an iterative process going on there there's plenty of back and forth you may not like it but there's plenty of back and forth and at the end of the day she just doesn't do what she's asked to do and that the what is wrong with that argument from drexel that's what we understood was the only accommodation she was looking for that was the accommodation that there was lots of back and forth on i think that the um the problem with that argument your honor is that um drexel's saying we told her right off the bat you go to guardian they'll give you all the that you need and as a matter of fact drexel is saying we were under the impression that all of these absences she were taking were covered by fmla except for the fact that in june when she has these meetings about those absences minus any kind of progressive discipline as well minus any kind of progressive discipline of verbal warning written warning suspension termination they at that meeting lachelle says no no no these these are supposed to be protected i did turn in my certifications i i watched my doctor fax those well she might have she might have thought she did but the record reflects that that they that that february 28th letter really is a key thing because that even if they had messed up before that gave her the opportunity to fix it and she just didn't do it the fact that she didn't understand she didn't do it may be highly regrettable but but how is that how does that turn into an ada claim that you didn't engage when there's all this engagement over a period of months because the the engagement on the part of drexel is to when when she says these absences should be protected at that point that triggers the interactive process that is the triggering event it's not her obtaining fmla leave okay so so the legal position you're taking is even if drexel did everything right under the fmla once they told her once it was uh uh the case that they brought her in and said you didn't get this leave and they can show she didn't get the leave that they had some new obligation under the ada to do more to give her leave i believe that your honor yes and further that the ada the ada is sort of like a fmla plus that's once once you've done everything you have to do as an employer under the fmla leave you still have an obligation under the ada to do something additional with respect to leave that's the that's the argument that you're making right that's correct at least under these facts these are these facts i got you okay okay thank you we'll take the matter under advisement and patrick